UNITED STATES DISTRICT COURT
                        DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ABDULLAHI YASIN MUSE, | Case No. 18-CV-0054 (PJS/LIB) |
| Petitioner, | |
| v. | ORDER |
| JEFFERSON B. SESSIONS, III, Attorney General; KIRSTJEN NIELSEN, Secretary, Department of Homeland Security; THOMAS HOMAN, Director, Immigration and Customs Enforcement; PETER BERG, Director, St. Paul Field Office Immigration and Customs Enforcement; and KURT FREITAG, Freeborn County Sheriff, | |
| Respondents. | |

---

John R. Bruning, KIM HUNTER LAW, PLLC, for the petitioner.

Ana H. Voss and Ann M. Bildtsen, UNITED STATES ATTORNEY'S OFFICE, and David John Walker, FREEBORN COUNTY ATTORNEY'S OFFICE, for the respondents.

This is a habeas action brought under 28 U.S.C. § 2241 by plaintiff Abdullahi Yasin Muse, a removable alien who has now been held in custody by Immigration and Customs Enforcement ("ICE") for over 14 months. In a Report and Recommendation ("R&R") dated April 12, 2018, Magistrate Judge Leo I. Brisbois recommended that Muse's petition be granted. Respondents Jefferson Sessions, Kirstjen Nielsen, Thomas Homan, and Peter Berg (collectively "the government") object to the R&R.

Because the issues raised by Muse's petition and the government's objection are complex and difficult, the Court held a hearing on the government's objection, which unfortunately could not be scheduled until August 14, 2018. Based on a de novo review of the R&R, *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), the Court now overrules the government's objection, adopts the R&R to the extent that it is consistent with this order, and requires that Muse be provided with a bond hearing before an immigration judge ("IJ") no later than October 15, 2018.

## I. BACKGROUND

Muse, a native of Somalia, came to the United States in 1995 as a refugee and soon became a lawful permanent resident. ECF No. 1 at 7; ECF No. 9 at 1. In 2013, Muse was convicted of theft by obtaining services without payment, ECF No. 7-2 at 2, and two years later he was convicted of financial transaction card fraud, ECF No. 7-3 at 2. Muse concedes that he has been "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct," and thus that he is removable under 8 U.S.C. § 1227(a)(2)(A)(ii). *See* ECF No. 16 at 3.

The Department of Homeland Security ("DHS") initiated removal proceedings against Muse and, on July 5, 2017, ICE agents took him into custody under 8 U.S.C. § 1226(c). ECF No. 7 at 2. Muse sought cancellation of removal and other relief in immigration proceedings. Muse initially prevailed before the IJ, who granted his

request for cancellation of removal. ECF No. 1-2 at 2-3. But the Board of Immigration Appeals ("BIA") reversed the IJ's decision and remanded for consideration of Muse's remaining claims. ECF No. 14-1 at 3. On August 10th, 2018, the IJ rejected Muse's remaining claims, denied all relief, and ordered him removed. ECF No. 20-1 at 2, 23. Muse has appealed the IJ's decision. ECF No. 21. Muse remains detained.

In this habeas proceeding, Muse contends that his lengthy detention without being afforded a bond hearing violates the Due Process Clause of the Fifth Amendment. ECF No. 1 at 25-26. The Court agrees and consequently will order that Muse be afforded a bond hearing to determine whether continued detention is warranted.[1]

## II. ANALYSIS

Section 1226(c) requires the detention of aliens such as Muse who have been convicted of specific offenses that render them removable. Such aliens must be "detained pending a decision on whether [they are] to be removed from the United

---

[1]Muse has also brought various statutory claims. ECF No. 1 at 22-25. As both parties acknowledge, however, the Court lacks jurisdiction over those claims. *See* 8 U.S.C. § 1226(e). The Court therefore dismisses those claims without prejudice.

In addition to bringing a claim under the Due Process Clause, Muse has brought a claim under the Fourth Amendment. The Court has jurisdiction over both of Muse's constitutional claims. *See Demore v. Kim*, 538 U.S. 510, 517 (2003). But because the Court is granting relief on Muse's due-process claim, the Court will dismiss Muse's Fourth Amendment claim as moot. Neither party has argued—and the Court is unaware of any authority suggesting—that Muse is entitled to broader relief under the Fourth Amendment than under the Due Process Clause.

States." 8 U.S.C. § 1226(a).  In *Demore*, the Supreme Court held that the government may, consistent with the Due Process Clause, detain removable aliens under § 1226(c) for the "brief period necessary" for removal proceedings to run their course.  538 U.S. at 513.

Constitutional difficulties arise, however, when detention under § 1226(c) ceases to be "brief."  The Supreme Court has warned that indefinite detention during removal proceedings would raise "serious constitutional concerns."  *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).  Cognizant of those concerns, several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained.  *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270, 2018 WL 4000993 (1st Cir. May 11, 2018); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *overruled by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted, vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

Earlier this year, however, the Supreme Court rejected these efforts.  In *Jennings*, the Court held that the language of § 1226(c) clearly mandates that certain removable aliens be detained for the entire duration of removal proceedings and that the canon of constitutional avoidance cannot be used to alter the terms of such a clear statute.  138 S.

Ct. at 846-48. The Court expressed no view on the constitutional question that the lower courts had tried to avoid: What limitations does the Due Process Clause place on detention under § 1226(c)? That question is now before this Court.

Both parties agree that the Due Process Clause imposes *some* limitations on detention under § 1226(c). The parties could hardly argue otherwise. The Supreme Court has long recognized that the Due Process Clause protects aliens who are present within the United States, including those who are subject to removal. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") Every federal court of appeals to have addressed the issue after *Demore* has recognized that the Due Process Clause restricts how long the government may detain an alien under § 1226(c). *See Reid*, 819 F.3d at 494 ("Because of the limited nature of the holding in *Demore*, every federal court of appeals to examine § 1226(c) has recognized that the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention that can be considered justifiable under that statute.").

The parties disagree, however, about whether Muse's ongoing detention violates the Due Process Clause. The government contends that the Due Process Clause permits detention of an alien for the entire duration of removal proceedings so long as the

government acts in good faith and does not engage in dilatory conduct.[2] Absent bad-faith conduct, the government argues, the length of detention carries no independent constitutional significance. In the government's view, only in "extraordinary cases" would the Due Process Clause require that an alien be released (or be afforded a bond hearing) prior to the conclusion of removal proceedings. ECF No. 13 at 10.

The government's position is difficult to square with the Supreme Court's reasoning in *Demore*. In upholding the constitutionality of mandatory detention under § 1226(c), the Supreme Court took care to note that such detention is for only a "very limited" and "brief" period of time. *Demore*, 538 U.S. at 529 n.12, 513. Woven throughout *Demore* are repeated references to the brevity of detention under § 1226(c). *Id.* at 526 (describing the Court's "longstanding view that the Government may constitutionally detain deportable aliens during the *limited period* necessary for their removal proceedings" (emphasis added)); *id.* at 529 (explaining that most detentions under § 1226(c) last for "less than the 90 days we considered presumptively valid in

---

[2]The government also concedes that the detention must serve § 1226(c)'s purposes. But the government believes that detention virtually *always* furthers the purposes of § 1226(c), which are to prevent removable aliens from fleeing or posing a threat to the community. *See Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 475 (3d Cir. 2015) (describing "the statute's goals" as "ensuring participation in the removal process, and protecting the community from the danger that [the removable alien] poses"); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011) (describing the "statute's purposes" as "ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community").

*Zadvydas*"). The Court distinguished the detention of an alien during the pendency of removal proceedings under § 1226(c) (the detention that was at issue in *Demore* and that is at issue here) from the detention of an alien after a final order of removal has been entered under § 1231 (the detention that was at issue in *Zadvydas*). The Court explained that, while § 1231 detention was potentially limitless—because removal may be practically impossible if, say, no country will accept the alien—§ 1226(c) detention lasts for a "much shorter duration." *Id.* at 528. Indeed, the Court emphasized that § 1226(c) detention "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530.

*Zadvydas* similarly undermines the government's argument. In *Zadvydas*, the Supreme Court construed § 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." 533 U.S. at 682. The Court held that it is presumptively unreasonable to keep an alien subject to a final removal order in custody for more than six months. *Id.* at 701. The Court read such a limitation into § 1231(a)(6) to avoid the "serious constitutional concerns" that would result if § 1231(a)(6) were construed to permit indefinite detention. *Id.* at 682.

In this case, the government distinguishes *Zadvydas* by pointing to the distinction made by the Supreme Court in *Demore*: that § 1231 detention may be indefinite and

even permanent, whereas § 1226(c) detention must terminate at some point (typically within a couple of months). The government is correct that § 1226(c) detention has a definite end point: the conclusion of removal proceedings. But as detention drags on beyond the time frame contemplated in *Demore* and begins to resemble the indefinite detention addressed in *Zadvydas*, the constitutional issues that concerned the Supreme Court in *Zadvydas* become more salient. *See Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018) ("[A]lthough the language of § 1226 technically ascribes an end point to all detention under the section by authorizing detention only until 'a decision on whether the alien is to be removed' is reached, such detention in reality could, for some detained aliens, become potentially indefinite." (quoting 8 U.S.C. § 1226(a) (citation omitted)).

For these reasons, the Court rejects the government's argument that the Due Process Clause imposes no limitation on the length of § 1226(c) detention when the government has not engaged in dilatory tactics. Instead, the Court follows the lead of virtually every court that has addressed the issue following *Jennings*—including two judges of this District—and holds that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable. *See, e.g.*, *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-CV-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *Report and*

*Recommendation adopted*, No. 17-CV-5055 (DWF/DTS), 2018 WL 2390132 (D. Minn. May 25, 2018); *Tindi v. Sec'y, Dep't of Homeland Sec.*, No. 17-CV-3663 (DSD/DTS), 2018 WL 704314, at *3 (D. Minn. Feb. 5, 2018).

Courts taking this approach have used several factors to guide them in identifying the point at which "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." *Diop*, 656 F.3d at 232. Among those factors are (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Cf. Reid*, 819 F.3d at 500-01.[3]

---

[3] The *Reid* factors "represent a reasonable framework for balancing the due process interests at stake" even though they were "originally adopted in the context of reading an implicit reasonableness limitation into § 1226(c)," *Portillo v. Hott*, No. 1:18-470, 2018 WL 3237898, at *7-9 (E.D. Va. July 3, 2018), and even though the First Circuit withdrew the *Reid* decision after the Supreme Court decided *Jennings*, 2018 WL 4000993.

Some courts also compare the length of the § 1226(c) detention with the length of the sentences imposed for the "predicate" convictions that rendered the detainee removable. *E.g.*, *Reid v. Donelan*, 991 F. Supp. 2d 275, 281 (D. Mass. 2014). The Court does not find this factor particularly helpful. Section 1226(c) detention and criminal incarceration are different types of custody imposed for different reasons by different

(continued...)

In this case, most of these factors support Muse's argument that his continued detention—without a bond hearing at which an IJ could consider whether he is a danger to the community or likely to flee—would violate the Due Process Clause:

*First*, courts consider the length of detention. Aliens detained under § 1226(c) are "immediately and unconditionally" deprived "of all liberty without any hearing." *Fuller v. Gonzales*, No. 3:04-2039, 2005 WL 818614, at *5 (D. Conn. Apr. 8, 2005). How long this deprivation has lasted is critical to the due-process inquiry. As noted, *Demore* expressed the understanding that detention under § 1226(c) would be brief, and this assumption was "key to [the Court's] conclusion that the law complied with due process." *Chavez-Alvarez*, 783 F.3d at 474. Without question, then, "continued detention without inquiry into its necessity becomes more and more suspect" as detention continues past the time frame described in *Demore*. *Diop*, 656 F.3d at 234.

---

[3](...continued)
sovereigns. The Court cannot understand why the length of a sentence imposed on an alien years ago by, say, the State of Minnesota to punish him for a predicate offense has any bearing on whether the alien's current civil detention by the federal government under § 1226(c) is constitutional. Why, for example, should it be permissible to detain an alien who was sentenced to 12 months for theft longer than an alien who was sentenced to three months for theft?

In any event, consideration of this factor would only strengthen the Court's conclusion that Muse's continued detention without a bail hearing would be unconstitutional. Muse was sentenced to two days in jail for one of his convictions and 45 days in jail for the other, whereas he has been detained for over 14 months under § 1226(c). *See* ECF No. 7-2 at 5 (confinement of two days for theft of services); ECF No. 7-3 at 4 (confinement of forty-five days for financial transaction card fraud).

The length of Muse's detention strongly favors granting relief. Over 14 months have passed since ICE first took Muse into custody. *See* ECF No. 7 at 2. He still has not received any individualized determination regarding whether he is a danger to the community or likely to flee. Muse's detention has now lasted over twice as long as the detention at issue in *Demore*. Much shorter detentions have been found unreasonable under the Due Process Clause. *See, e.g.*, *Sajous*, 2018 WL 2357266, at *1, *7 (eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v. Shanahan*, No. 15-261, 2015 WL 1176706, *3-4 (S.D.N.Y. March 13, 2015) (eight months). As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing. *See, e.g.*, *Vega v. Doll*, No. 3:17-01440, 2018 WL 3765431, at *10-13 (M.D. Pa. July 11, 2018), *Report and Recommendation adopted*, No. 3:17-01440, 2018 WL 3756755 (M.D. Pa. Aug. 8, 2018) (twenty months); *Portillo*, 2018 WL 3237898, at *7-9 (fourteen months); *Gjergji v. Johnson*, No. 3:15-1217, 2016 WL 3552718, at *9 (M.D. Fla. June 30, 2016) (eighteen months); *Bautista v. Sabol*, 862 F. Supp. 2d 375, 381-82 (M.D. Pa. 2012) (over twenty-five months).

True, a few courts have upheld § 1226(c) detentions that lasted more than a year. *See, e.g.*, *Dryden v. Green*, No. 18-2686, 2018 WL 3062909, at *5 (D.N.J. June 21, 2018) (finding no due-process violation for detention lasting "just over a year"); *Maynard v. Hendrix*, No. 11-0605, 2011 WL 6176202, at *1-2, *4 (D.N.J. Dec. 12, 2011) (holding that an

18-month detention did not violate the implicit reasonableness requirement in § 1226(c)).  But Muse's circumstances are materially different from those cases.  In *Dryden*, the court held that the alien's nearly 13-month detention did not violate the Due Process Clause because "the majority of the delay in [the alien's] immigration results [was] directly attributable to [his] own delay in acquiring counsel and ultimately filing his petition for relief[.]"  2018 WL 3062909, at *5.  And in *Maynard*, the court held that the alien's 18-month detention was not unreasonably prolonged because delays in the removal proceedings were "attributable almost exclusively to [the alien's] repeated requests for adjournments."  2011 WL 6176202, at *4.  By contrast, Muse has not engaged in any dilatory conduct.  He has merely "raised a colorable claim against deportation" and "vigorously contest[ed] removal[,]" as is his right.  *Reid*, 991 F. Supp. 2d at 282.

*Second*, courts consider how long the detention is likely to continue in the absence of judicial relief.  In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals.  *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.").

This factor too strongly supports granting relief. Muse could easily be detained another 18 months or more. The IJ denied Muse's remaining claims for relief on August 10, 2018. ECF No. 20-1 at 2. Muse has just appealed that decision to the BIA. ECF No. 21. The DHS's appeal of the IJ's initial determination was not resolved by the BIA until almost five months after the IJ issued her decision. *See* ECF No. 1-2 at 13-15 (notice of appeal filed on November 16, 2017); ECF No. 14-1 at 1 (BIA opinion filed on April 10, 2018). If Muse loses his administrative appeal, he will undoubtedly seek review in the Eighth Circuit, and it may be another year before he gets a decision.

*Third*, courts consider the conditions of the alien's detention. Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration. *Chavez-Alvarez*, 783 F.3d at 478. The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing. *See id.* And "[a]s the length of the detention grows, the weight given to this aspect of his detention increases." *Id.*

Currently, ICE is housing Muse in a county jail alongside inmates who are serving criminal sentences. ECF No. 1 at 8, 13; ECF No. 9 at 2. The government concedes—as it must—that ICE is detaining Muse under conditions that are indistinguishable from penal confinement.[4] This factor also weighs in Muse's favor.

---

[4]Muse claims that he has been denied access to prescribed medical treatment and
(continued...)

*Fourth*, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. An alien should not be punished for raising legitimate defenses to removal. *See Ly*, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."). Courts should, however, be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Id.* If courts did not take into account the alien's role in delaying removal proceedings, they "would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." *Id.*

The government has not argued—and no evidence suggests—that Muse has engaged in any dilatory tactics. He has merely raised non-frivolous arguments in support of his position. (Indeed, he initially prevailed before the IJ.) He has also complied with all deadlines, and he had not sought delays. This factor, too, weighs in Muse's favor.

---

[4](...continued)
mental-health resources. ECF No. 1 at 5-6. The Court does not address this issue because no record has been developed regarding Muse's access to medical care.

*Fifth*, courts consider the nature and extent of any delays in the removal proceedings caused by the government. "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11.

Like Muse, the government has not engaged in any dilatory tactics. Like Muse, the government has merely made non-frivolous arguments in support of its position. (Indeed, the government prevailed in its appeal to the BIA.) And like Muse, the government has complied with all deadlines and not sought delays. Moreover, both the IJ and the BIA have been reasonably prompt in issuing decisions. This factor weighs in the government's favor.

*Finally*, courts consider the likelihood that the proceedings will culminate in a final removal order. The more likely that the alien will be removed, the longer the detention that will be deemed reasonable. *Id*.

This factor does not weigh in either party's favor. The fact that the IJ (after being reversed by the BIA) has ordered that Muse be removed certainly does not help Muse. But Muse has appealed that decision to the BIA. Neither party has said much about the arguments that Muse and the government made before the IJ—or will make before the BIA—and thus the Court does not have a sufficient basis to determine whether Muse is likely to be removed.

In sum, four of these factors weigh in favor of Muse (a couple strongly), one weighs in favor of the government, and one is neutral. The Court therefore finds that continuing to detain Muse without affording him a bond hearing would violate his rights under the Due Process Clause.

The Court will order that an IJ conduct a bond hearing no later than October 15, 2018. (The delay is necessary to allow the parties to prepare for the hearing and to give the IJ a reasonable amount of time to schedule the hearing.) At that hearing, the parties must be allowed to present evidence and argument about whether Muse is a danger to the community and whether Muse is likely to flee if he is not detained. Such a hearing will protect both Muse's rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c). *See Portillo*, 2018 WL 3237898, at *8 ("Moreover, the government's interest in guarding against [the alien's] flight can be substantially protected even if [the alien] is given an individualized bond hearing and released on bond because a critical factor that the IJ will be forced to consider is whether [the alien] is a flight risk and whether there are conditions of release that could reasonably secure his future appearance.").

At oral argument, both parties discussed issues regarding the standard and burden of proof at the bond hearing. This issue was not briefed by the parties,

however, and Court believes that the IJ should have the first opportunity to address such matters. Nothing in this order is intended to suggest what standard of proof (preponderance of the evidence, clear and convincing evidence, proof beyond a reasonable doubt, or something else) will apply at the bond hearing. And nothing in this order is intended to suggest whether it is Muse or the government who must meet that burden. Those matters are left for the IJ to determine in the first instance.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES respondents' objection [ECF No. 13] and ADOPTS the R&R [ECF No. 9] to the extent that it is consistent with this order. IT IS HEREBY ORDERED THAT:

1. Muse's application for a writ of habeas corpus under 28 U.S.C. § 2241 [ECF No. 1] is GRANTED IN PART with respect to Count V (the Due Process claim).

2. No later than October 15, 2018, an immigration judge must provide Muse with a bond hearing. At this hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Muse from fleeing.

3. Counts I, II, and III of the petition are dismissed without prejudice for lack of jurisdiction, and Count IV of the petition is dismissed without prejudice because it is moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 18, 2018         s/Patrick J. Schiltz
                                  Patrick J. Schiltz
                                  United States District Judge