UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ABDULLAHI MUSE,

              Petitioner,

v.

WILLIAM P. BARR, Attorney General;
KEVIN MCALEENAN, Acting Secretary,
Department of Homeland Security;
MATTHEW T. ALBENCE, Acting
Director, Immigration and Customs
Enforcement; PETER BERG, Director, St.
Paul Field Office Immigration and
Customs Enforcement; and KURT
FREITAG, Freeborn County Sheriff,

              Respondents.[1]

Case No. 18-CV-0054 (PJS/LIB)

ORDER

---

John R. Bruning, KIM HUNTER LAW, PLLC, for petitioner.

Ana H. Voss and Ann M. Bildtsen, UNITED STATES ATTORNEY'S OFFICE, for respondents.

This matter is before the Court on petitioner Abdullahi Muse's motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.

---

[1]Pursuant to Fed. R. Civ. P. 25(d), William P. Barr, Attorney General, is substituted for Jefferson B. Sessions, III; Kevin McAleenan, Acting Secretary of the Department of Homeland Security, is substituted for Kirstjen Nielsen; and Matthew T. Albence, Acting Director of Immigration and Customs Enforcement, is substituted for Thomas Homan.

Muse, a native of Somalia, came to the United States in 1995 as a refugee and soon became a lawful permanent resident. ECF No. 1 at 7; ECF No. 9 at 1. In 2013, Muse was convicted of theft by obtaining services without payment, ECF No. 7-2 at 2, and two years later he was convicted of financial transaction card fraud, ECF No. 7-3 at 2. The Department of Homeland Security initiated removal proceedings against Muse and, on July 5, 2017, United States Immigration and Customs Enforcement took him into custody under 8 U.S.C. § 1226(c).

Months after he was taken into custody, Muse sought habeas relief under 28 U.S.C. § 2241, arguing that his prolonged detention without an individualized hearing violated due process. The Court granted Muse's petition in part and ordered an immigration judge to "make an individualized determination regarding whether detention is necessary to protect the community or to prevent Muse from fleeing." *Muse v. Sessions*, No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052, at *7 (D. Minn. Sept. 18, 2018). Muse now moves for an award of attorney's fees. ECF No. 24.

The EAJA provides that a prevailing party is entitled to fees and expenses in any action brought against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).[2] "Substantially justified means 'justified to a degree

---

[2]The government does not dispute that Muse is a prevailing party, his net worth
(continued...)

-2-

that could satisfy a reasonable person.'" *Bah v. Cangemi*, 548 F.3d 680, 683 (8th Cir. 2008) (quotation omitted). A litigation position that is ultimately rejected may nonetheless be substantially justified if "a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 683-84 (quotation omitted); *see Mattson v. Bowen*, 824 F.2d 655, 656 (8th Cir. 1987) ("To show that his position is 'substantially justified,' the Secretary must show that it is 'clearly reasonable, well founded in law and fact, solid though not necessarily correct.'" (quotation omitted)). The government bears the burden of demonstrating that its litigation position was substantially justified. *Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995).

Throughout this litigation, the government has taken the position that the Due Process Clause does not place *any* limit on the detention of a criminal alien under § 1226(c) so long as that detention serves an "immigration purpose"—that is, ensures that the alien will not flee (so that the government can "effect[] removal of a criminal alien if he is ordered removed at the end of the proceedings," ECF No. 13 at 7) and ensures that the alien will not endanger the community. Of course, this is no limitation at all, because detaining a criminal alien will *always* ensure that the alien will not flee or endanger the community. That is the reason why the government argues that, no

---

²(...continued)
does not exceed $2,000,000, the action was civil and adversarial, and he filed a timely application for fees and costs. *See* 28 U.S.C. § 2412 (listing requirements that must be met to obtain attorney's fees).

matter how long a criminal alien is detained under § 1226(c), the alien is never entitled to a bond hearing at which a judge makes an individualized determination about the likelihood that he will flee or endanger the community. Indeed, not only does the government contend that the length of detention carries no constitutional significance, the government argues (somewhat perversely) that the *longer* a criminal alien is detained, the *more* justifiable is his continued detention:

> [T]he government's interest in keeping the alien in custody (and the alien's incentive to abscond) will typically increase over time as removal proceedings progress towards their completion. A criminal alien on the cusp of removal has a greater incentive to abscond than one who is at the beginning of his proceedings.

ECF No. 13 at 7. According to the government, only if the government acts in bad faith by unreasonably delaying removal proceedings might a court conclude that the alien was not being detained for an "immigration purpose" (but instead for punitive or other purposes) and that the Due Process Clause is violated. But, says the government, such a case would be "extraordinary." *Id.* at 10. At bottom, the government's position is that, as long as the government acts in good faith, a criminal alien can be detained under § 1226(c) for as long as necessary to complete the removal proceedings—and the alien is never entitled to a bond hearing regarding the likelihood that he will flee or endanger the community if released.

In its prior order, the Court identified significant problems with the government's position, including the fact that the government's position cannot be reconciled with the two most relevant Supreme Court cases: *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), and *Zadvydas v. Davis*, 533 U.S. 678 (2001). *Muse*, 2018 WL 4466052, at *3. The government argues that its position was nevertheless substantially justified because the language of § 1226(c) mandates the detention of Muse and similar removable aliens. ECF No. 29 at 3; *see Jennings*, 138 S. Ct. at 847. That is true, but irrelevant. The central question in this litigation is not what the statute requires, but instead the *constitutionality* of what the statute requires. *See Jennings*, 138 S. Ct. at 851 (holding that § 1226(c) requires detaining criminal aliens but leaving open the question of whether the Due Process Clause imposes limits on that detention).

More to the point, the government argues that its position was substantially justified because neither the United States Supreme Court nor the Eighth Circuit has expressed an opinion on the extent to which the Due Process Clause limits detention under § 1226(c). ECF No. 29 at 4 ("Given this dearth of . . . precedent on the constitutionality of § 1226(c) as applied here, the United States' position in this matter was substantially justified."). The government emphasizes that

> [t]he clarity of the governing law is an important factor to consider in determining whether the government's position was substantially justified. . . . [I]f the governing law is

> unclear or in flux, it is more likely that the government's position will be substantially justified.

*Mattson*, 824 F.2d at 657 (quoting *Martinez v. Sec'y of Health and Human Servs.*, 815 F.2d 1381, 1383 (10th Cir.1987)).

The Court does not agree that the governing law was "unclear or in flux" *regarding the position taken by the government in this litigation*. See *Herring v. United States*, 781 F.2d 119, 121-22 (8th Cir. 1986) (looking to the government's specific litigation position before the district court when deciding if attorney's fees were warranted under the EAJA). It is true that neither the United States Supreme Court nor the Eighth Circuit has decided to what extent the Due Process Clause limits detention under § 1226(c). But that question has been addressed by numerous other federal courts—and, as best as the Court can determine, every single one of those courts (including this Court[3]) has rejected the government's position that § 1226(c) detention can continue indefinitely unless the government has acted in bad faith. Moreover, as best as the Court can tell, not a single court has agreed with the government's position that the length of the alien's detention is irrelevant.

Instead, "virtually every court that has addressed the issue following *Jennings* . . . [has held] that a due-process challenge to § 1226(c) detention must be resolved by

---

[3]*See, e.g., Mohamed v. Sec'y, Dep't of Homeland Sec.*, 376 F. Supp. 3d 950 (D. Minn. 2018).

closely examining the facts of the particular case to determine whether the detention is reasonable." *Muse*, 2018 WL 4466052, at *3. In making such an individualized decision, courts have examined several factors, including:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.*[4]

---

[4]In the six months between the date that the Supreme Court issued its decision in *Jennings* (February 27, 2018) and the date that Muse's case was argued before the undersigned (August 14, 2018), numerous courts held that aliens were constitutionally entitled to bond hearings to determine whether further detention would violate the Due Process Clause. *See, e.g.*, *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108 (S.D.N.Y July 25, 2018); *Portillo v. Holt*, 322 F. Supp. 3d 698 (E.D. Va. 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, 376 F. Supp. 3d 950 (D. Minn. 2018). Even cases *denying* habeas petitions agreed that the length of detention is relevant to the constitutional analysis. *See, e.g.*, *Dryden v. Green*, 321 F. Supp. 3d 496 (D.N.J. 2018) ("[T]he Court accepts that the 'constitutionality of [detention pursuant to § 1226(c) without a bond hearing] is a function of the length of the detention [and t]he constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [certain] thresholds.'").

The Court also notes that, prior to *Jennings*, every court of appeals that addressed the issue read into § 1226(c) a reasonableness limitation in order to avoid the constitutional concerns raised by prolonged detention. *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016); *Rodgriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015); *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469 (3d Cir. 2015); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003). These decisions have, of course, been abrogated or withdrawn in light of *Jennings*, but they provide further evidence of the unreasonableness of the government's position in this case. *See Howard*

(continued...)

-7-

In sum, the government's position—that, as long as the government does not act in bad faith, an alien detained under § 1226(c) is *never* entitled to a bond hearing, no matter how long he is detained—was not substantially justified. That position has not been accepted by a single court, and it cannot be squared with *Jennings* and *Zadvydas*. Indeed, even if the government had merely argued that—considering the "total length of detention to date," "the likely duration of future detention," and the other factors identified above—Muse was not entitled to a bond hearing, the Court would most likely find that the government's position was not substantially justified, given that "four of these factors weigh in favor of Muse (a couple strongly), one weighs in favor of the government, and one is neutral." *Muse*, 2018 WL 4466052, at *6. But the Court need not reach that question, as the government took the extreme position that these factors were *irrelevant*.

Because the government failed to meet its burden to establish that its position had a "reasonable basis in law and fact," *Bah*, 548 F.3d at 683-84, Muse is entitled to an award of attorney's fees under the EAJA.[5] Muse seeks fees in the amount of $8,940.00.[6]

---

[4](...continued)
*v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) ("[A] string of losses or successes may be indicative of whether a position is substantially justified . . . .").

[5]The government also argues that, even if its position was not substantially justified, Muse should nevertheless be denied a fee award because "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The special
(continued...)

The government does not challenge the reasonableness of Muse's request—and, after reviewing the supporting materials, the Court finds that both the hourly rate and number of hours billed by Muse's attorneys are eminently reasonable. *See Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 328 (D.C. Cir. 2004) ("The EAJA limits a party's recovery to those fees and expenses that are 'reasonable.'").

Muse has asked the Court to order the government to pay the fees directly to his attorneys. ECF No. 27. Thus, the Court will order the government to make payment directly to Kim Hunter Law, PLLC, after the government first offsets any amount that Muse owes to the United States. *See Dornbusch v. Astrue*, No. 09-CV-1734 (PJS/JJG), 2011 WL 779781, at *1-2 (D. Minn. Mar. 1, 2011) (ordering the defendant to pay EAJA fees and costs directly to the prevailing party's attorney).

ORDER

---

[5](...continued)
circumstances exception is a safety valve designed to [ensure] that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." *U.S. SEC v. Zahareas*, 374 F.3d 624, 627 (8th Cir. 2004) (cleaned up). For the reasons already explained, the Court does not believe that the government's litigation position can fairly be characterized as "novel but credible."

[6]Muse seeks $8,186.67 for attorney John R. Bruning (40 hours and 56 minutes at $200 per hour), $373.33 for attorney Kimberly Hunter (1 hour and 52 minutes at $200 per hour), and $380 for paralegal Mary Georgevich (3 hours and 48 minutes at $100 per hour).

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Petitioner's motion for attorney's fees pursuant to the EAJA [ECF No. 24] is GRANTED.

2. Petitioner is awarded $8,940.00 in attorney's fees, subject to offset by any preexisting debt that petitioner owes to the United States.

3. Respondents are directed to pay the above-awarded fees, minus any applicable offset, directly to Kim Hunter Law, PLLC by October 11, 2019.

Dated: September 9, 2019  s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge